**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**SPORTPET DESIGNS INC.,**
**Plaintiff,**

**v.** **Case No. 17-CV-0554**

**CAT1ST CORPORATION**
**and JUN TAKEUCHI,**
**Defendants.**

---

## DECISION AND ORDER

SportPet Designs Inc. brings this action against Cat1st Corp. and Jun Takeuchi alleging patent, trademark, and copyright infringement and violations of Wisconsin's Deceptive Trade Practices Act. SportPet's claims concern the production, importation, advertisement, and sale of pet products, such as play structures for cats. Cat1st moves to dismiss for improper venue and failure to state a claim upon which relief can be granted.[1] Fed. R. Civ. P. 12(b)(3), (6). Takeuchi joins Cat1st's motion and further moves to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). I will address personal jurisdiction and venue before considering the sufficiency of the complaint.

## I. PERSONAL JURISDICTION

Personal jurisdiction primarily concerns "the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1779 (2017). There are "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Id.* at 1780. "For an individual, the paradigm forum for the exercise of general jurisdiction is

---

[1] This is Cat1st's second motion to dismiss. Its first motion to dismiss was mooted when SportPet timely amended its complaint. I will deny that motion accordingly.

the individual's domicile . . . ." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). The parties agree that Takeuchi, a resident of Japan, is not domiciled in Wisconsin so is not subject to general jurisdiction here.

"Specific jurisdiction is very different." *Id.* While "[a] court with general jurisdiction [over a defendant] may hear any claim against that defendant, . . . . for a . . . court to exercise specific jurisdiction, . . . . there must be 'an affiliation between the forum and the underlying controversy,'" usually, "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (*Goodyear*, 564 U.S. at 919). Moreover, a court can only "exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Goodyear*, 564 U.S. at 923 (alteration in original) (internal quotation marks omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The exercise of specific jurisdiction is appropriate where a defendant's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe*, 326 U.S. at 316; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). How that rule applies "will vary with the quality and nature of the defendant's activity, but it is essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 474–75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

SportPet alleges and Takeuchi concedes that, in 2011, he visited Wisconsin on behalf of his company D-Culture, then a distributor for SportPet in Japan, and spent 10 days here meeting with SportPet and its CEO, Adam Kellogg. According to Kellogg, "[Takeuchi] was highly inquisitive during this trip about the details of SportPet's patents and trademarks," and "[a] large majority of this business trip was spent discussing the intellectual property that forms the basis for the lawsuit here." Kellogg Decl., ECF No. 30-1, ¶¶ 5–6. SportPet argues that Takeuchi "traveled to Wisconsin to . . . enhance his knowledge of SportPet's intellectual property and business dealings" and "then used this knowledge to manufacture . . . infringing products," using "Cat1st as a conduit to import the infringing products to the United States, where they are sold throughout the United States and in Wisconsin." Pl.'s Br., ECF No. 30, at 5.

Even accepting the truth of SportPet's arguments and allegations, it overstates the significance of Takeuchi's 2011 business trip. While a defendant's "physical entry into the [forum] State . . . is certainly a relevant contact," *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014), the exercise of specific jurisdiction is only appropriate where a plaintiff's asserted claims actually "arise out of" the defendant's activities in the state, *Burger King*, 471 U.S. at 472 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). SportPet is not suing Takeuchi for anything he did during his lone trip to Wisconsin. Instead, it is suing him and his company for infringing its publicly disclosed intellectual property and using deceptive trade practices based on the production, importation, advertisement, and sale of goods years later.

SportPet has not shown that any of its claims arise out of Takeuchi's activities in Wisconsin. It alleges, "The Defendants manufactured the infringing products in China."

Am. Compl., ECF No. 11, ¶ 13. It alleges that they "imported the infringing products into the United States"—though it does not say into what state or states they imported them. *Id.* It then vaguely alleges that "[Takeuchi] and Cat1st are selling the infringing products online," *id.* ¶ 42, including (presumably) to consumers in Wisconsin. However, its specific allegations and filings concerning the actual advertisement and sale of accused products only implicate Cat1st. *See id.* ¶¶ 54–56, ¶¶ 59–61, ¶¶ 64–66, ¶¶ 69–71, ¶¶ 74–76, ¶¶ 79–87 (describing various product listings and attributing them to Cat1st); *see also* ECF No. 21-5, at 1 (listing items ordered from Amazon.com as sold by Cat1st). I cannot exercise specific jurisdiction over Takeuchi based on one contact with Wisconsin for which he is not being sued, his contacts in the United States but outside of Wisconsin, or his mere affiliation with Cat1st and its presumed contacts in Wisconsin.

SportPet argues that personal jurisdiction is appropriate here based on Federal Rule of Civil Procedure 4(k)(2), which provides, "For a claim that arises under federal law, serving a summons . . . establishes personal jurisdiction over a defendant if . . . the defendant is not subject to jurisdiction in any state's courts of general jurisdiction" and "exercising jurisdiction is consistent with the United States Constitution and laws." However, where a defendant lacks the requisite minimum contacts with the forum state, exercising personal jurisdiction there over that defendant is inconsistent with constitutional due process. *See World-Wide Volkswagen*, 444 U.S. at 291.

"The plaintiff bears the burden of establishing personal jurisdiction." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). SportPet has failed to satisfy that burden with respect to its claims against Takeuchi. Therefore, I will grant Takeuchi's motion to dismiss for lack of personal jurisdiction and dismiss him from this case.

## II. IMPROPER VENUE

Cat1st argues that this district is an improper venue for SportPet's patent claims against it. "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Cat1st is incorporated, and therefore "resides," in Nevada, so its residence does not provide a basis for venue in this district. *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1521 (2017). Thus, the parties dispute only whether venue is proper here under the second prong of § 1400(b), specifically focusing on whether Cat1st has a regular and established place of business in this district.

The Federal Circuit recently defined what constitutes a defendants' "regular and established place of business" for patent venue purposes. *See In re Cray Inc.*, 871 F.3d 1355, 1361–64 (Fed. Cir. 2017). First, there must be "a physical, geographical location in the district from which the business of the defendant is carried out." *Id.* at 1362. Second, the place of business must be "regular," meaning that it "operates in a 'steady[,] uniform[,] orderly [, and] methodical' manner"; "sporadic activity cannot create venue." *Id.* (alterations in original) (quoting 8 *The Century Dictionary and Cyclopedia* 5050 (William Dwight Whitney & Benjamin E. Smith eds., rev. 1911)). Third, the place of business must be "established," meaning that it has "sufficient permanence" and is "'stable,' . . . not transient." *Id.* at 1363. Finally, "it must be a place *of the defendant*," meaning that "the defendant must establish or ratify the place of business." *Id.*

The court also described relevant considerations in assessing whether a defendant has a regular and established place of business in the district. These include

"whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place"; "whether the defendant conditioned employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place"; and the defendant's "[m]arketing or advertisements . . . to the extent they indicate that the defendant itself holds out a place for its business" and "actually engage[s] in business from that location." *Id.* at 1363–64.

SportPet argues that Cat1st has a regular and established place of business in this district because it sells its products on Amazon.com and distributes them through the "Fulfillment by Amazon" program. "With Fulfillment by Amazon (FBA), [sellers] store [their] products in Amazon's fulfillment centers, and [Amazon] pick[s], pack[s], ship[s], and provide[s] customer service for these products." *See Fulfillment by Amazon*, Amazon, https://services.amazon.com/fulfillment-by-amazon/benefits.html (last visited Feb. 26, 2018). Amazon maintains a "fulfillment center"—basically a warehouse and distribution facility—in Kenosha, Wisconsin, within this district, and SportPet argues that Cat1st has shipped infringing products there for distribution within the state. Cat1st concedes that Amazon has used the Kenosha facility to fill orders for its products in the state but argues that it has never directly shipped any of its products there for distribution or storage and that venue isn't proper based solely on where its third-party distributor has regular and established places of business.

Amazon's Kenosha facility is a regular and established place of business. By all accounts, it is a stable, sufficiently permanent, physical location where business (including some of Cat1st's business) is carried out in a steady, orderly manner. Yet,

Cat1st does not own or lease the Kenosha facility, it does not have any discernable control over it or possessory rights in it, and it does not employ anyone there. Cat1st did not establish or ratify the place of business as its own but merely accepted that Amazon might use its Kenosha facility, or any of its more than 100 other fulfillment centers in the U.S, to store and distribute Cat1st's products. Moreover, while it seems that participants in the FBA program can ask Amazon to store their products in specific facilities, Amazon reserves the right to both limit a seller's inventory in a given facility and redistribute inventory between facilities as it sees fit. Thus, whatever else it might be, Amazon's Kenosha facility is clearly not Cat1st's "place of business," and venue here is not proper based on that facility's presence in this district alone.

The parties dispute whether Cat1st has ever directly shipped inventory to the Kenosha facility. Cat1st insists that it hasn't, but it has filed inconsistent declarations on that point. SportPet argues to the contrary, noting that it ordered some of Cat1st's products from Amazon and shipment-tracking information shows that the products at least passed through the Kenosha facility before final delivery. Pursuant to this dispute, SportPet moves to strike a declaration that Cat1st filed with its reply brief in support of its motion to dismiss; in the alternative, for leave to conduct discovery regarding venue and to file a sur-reply opposing Cat1st's motion to dismiss for improper venue; and for leave to file a reply brief in support of its motion to strike. I will deny these motions because even if SportPet is right that Cat1st directly sent inventory to Amazon's Kenosha facility for distribution to customers in Wisconsin, that would still be insufficient to show that Cat1st has a regular and established place of business in the district.

This district is an improper venue for SportPet's patent claims against Cat1st, so I must either dismiss those claims or transfer them to a district "in which [they] could have been brought," if transfer is "in the interest of justice." 28 U.S.C. § 1406(a). SportPet has not asked for transfer or shown that transfer would be in the interest of justice. Therefore, I will grant Cat1st's motion and dismiss SportPet's patent claims against it for improper venue.

## III. FAILURE TO STATE A CLAIM

Cat1st argues that SportPet's complaint fails to state any other cognizable claim for relief against it. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss on that basis, "a complaint must allege 'sufficient factual matter to state a claim to relief that is plausible on its face.'" *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826 (7th Cir. 2015) (quoting *Gogos v. AMS Mech. Sys. Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### A. Trademark Infringement

SportPet alleges infringement of two registered trademarks. One is the "POP OPEN" trademark, Registration No. 2,276,917, for use with collapsible containers for household use. The other is the "SPORT PET DESIGNS" trademark, Registration No. 3,204,404, for use with pet kennels, beds, and bedding and pet toys.

#### 1. "POP OPEN" Trademark

Cat1st argues that SportPet was not assigned the "POP OPEN" mark until after it brought this action, so it lacks standing to assert a claim for infringement of that mark.

To establish standing, a plaintiff must show that it suffered "an invasion of a legally protected interest." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Standing is a jurisdictional requirement, so it "depends on the state of things at the time of the action brought." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007) (quoting *Mullan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539 (1824)); 13A Charles Alan Wright et al., *Federal Practice and Procedure* § 3531 (3d ed.), Westlaw (updated Apr. 2017). SportPet concedes that it did not have a legally protected interest in the "POP OPEN" mark when it brought this action, so I must dismiss its claim for infringement of that mark due to lack of standing.

Moreover, even if SportPet now has and could establish standing to assert a claim against Cat1st for infringement of the "POP OPEN" trademark, that claim would still fail because nothing in the complaint plausibly suggests that Cat1st has infringed that mark. As relevant here, a "trademark" is a combination of words used "to identify and distinguish [a company's] goods . . . from those manufactured or sold by others and to indicate the source of the goods." *See* 15 U.S.C. § 1127. The owner of a registered trademark can sue anyone who, without its consent, "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of [the] mark in connection with the sale, offering for sale, distribution, or advertising of any goods" where "such use is likely to cause confusion, or to cause mistake, or to deceive." *See id.* § 1114(1)(a).

Here, the complaint repeatedly alleges that "Cat1st is violating SportPet's . . . Pop Open trademark[]" by "using and advertising the pop open design," which "is a protectable mark." *See* Am. Compl., ECF No. 11, ¶¶ 55, 60, 65, 70, 75, 80, 96. But the "POP OPEN" trademark does not protect "the pop open design"—by which I assume

SportPet means the physical design of its products. Rather, that trademark protects SportPet's use of the words "pop open" as a mark—and "any mark which so resembles" it "as to be likely to cause confusion or mistake or to deceive"—to identify and distinguish its goods from those manufactured or sold by others (e.g., Cat1st) and to indicate the source of the goods. *See* § 1127. Accordingly, while Cat1st's use of an infringing mark to advertise its competing goods may constitute trademark infringement, its use and advertisement of "the pop open design" does not.

The complaint also repeatedly alleges that "Cat1st's packaging and advertising copies" language from SportPet's packaging and advertisements—e.g., "pop open, sturdy and lightweight, for travel, and convenient for carrying"—"almost word for word." Am. Compl., ECF No. 11, ¶¶ 56, 66, 76, 81, 84, 87, 102. But *almost* word for word isn't enough here. While examples of Cat1st's advertisements and product listings provided in the complaint show its use of similar terms to those used by SportPet—e.g., "sturdy," "lightweight," "for travel," and "for your carrying convenience"—none use the specific phrase "pop open" (or a colorable imitation of it) in any way, much less as a distinguishing and source-identifying mark. *E.g.*, *id.* ¶ 54. Thus, I cannot reasonably infer from the facts as alleged that Cat1st has infringed the "POP OPEN" trademark, even if SportPet could establish standing to assert such a claim.

**2. "SPORT PET DESIGNS" Trademark**

SportPet alleges that Cat1st has infringed its "SPORT PET DESIGNS" trademark by using a logo that is confusingly similar to its own logo to mark its competing goods:






Am. Compl., ECF No. 11, ¶¶ 37–38. SportPet also offers examples of the parties' logos as used on their respective product packaging:







*Id.* ¶ 64.

Cat1st argues that the complaint's allegations of similarities between the companies' logos are irrelevant in light of the pertinent issue here: whether Cat1st's *logo* infringes SportPet's *trademark*, which is a mere word mark of the plain text "Sport Pet Designs," not SportPet's own graphic logo. To the contrary, the central issue in a trademark dispute is whether "consumers are likely to be confused as to the source" of the goods at issue "in light of what happens in the marketplace." *Sullivan v. CBS Corp.*, 385 F.3d 772, 776–77 (7th Cir. 2004) (quoting *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 898 (7th Cir. 2001)). "In other words, context is key." *Epic Sys. Corp. v. YourCareUniverse, Inc.*, 244 F. Supp. 3d 878, 893 (W.D. Wis. 2017). Thus, "in infringement cases, courts generally evaluate a mark as it's actually used, regardless of how it's registered—as a typewritten word, a word in a particular font, and so on." Rebecca Tushnet, *Registering Disagreement*, 130 Harv. L. Rev. 867, 882 (2017).

Cat1st further argues that the complaint fails to show that it has used its "SPORT PET JAPAN" logo in an infringing manner, noting that the images in the complaint demonstrating its uses of that logo are all "from packaging for products sold in Japan under an exclusive license agreement" between the parties, "where Cat1st lawfully owns the trademark registration for 'Sport Pet Japan.'" *See* Def.'s Br., ECF No. 12-1, at 18. This argument fails because it is based on "matters outside the pleadings" that I cannot consider on a motion to dismiss under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(d).

Cat1st also attempts to show that there is no likelihood of confusion by distinguishing between "Sport Pet Designs" and "Sport Pet Japan" as source-identifying marks, but its argument is unpersuasive for at least two reasons. First, Cat1st raises this argument for the first time in its reply brief, and in general, "an argument raised for the first time in a reply brief is forfeited." *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009). Second, whether the argument is forfeited, Cat1st contrasts the parties' marks "by looking at the two marks side-by-side," rather than "in light of what happens in the marketplace," as required. *Sullivan*, 385 F.3d at 777 (quoting *Ty, Inc.*, 237 F.3d at 898).

Cat1st has not shown that dismissal of SportPet's claims for infringement of its "SPORT PET DESIGNS" trademark is appropriate. Having reviewed the operative complaint, I find that it contains sufficient factual matter, taken as true, to permit me to draw the reasonable inference that Cat1st has infringed that trademark. Therefore, I will deny Cat1st's motion to dismiss with respect to these trademark infringement claims.

**B. Copyright Infringement**

SportPet alleges that Cat1st has infringed its "copyright in the product information contained on its advertising and copying," Am. Compl. ECF No. 11, ¶ 101, but it

concedes that it did not apply for or obtain copyright registration before it brought this suit. Federal law provides in relevant part that "no civil action for infringement of [a] copyright . . . shall be instituted until preregistration or registration of the copyright claim has been made." 17 U.S.C. § 411(a). In other words, "[c]ompliance with the registration requirements of . . . § 411(a) . . . is a prerequisite to suing for infringement." *Brooks-Ngwenya v. Indianapolis Pub. Sch.*, 564 F.3d 804, 806 (7th Cir. 2009). As SportPet did not comply with these requirements before suing, I must dismiss its copyright claims.

**C. Deceptive Trade Practices**

Finally, SportPet alleges that Cat1st has violated Wisconsin's Deceptive Trade Practices Act (DTPA) by "misrepresenting to the public . . . that [it is] selling SportPet's products" and "misrepresent[ing] to [SportPet] that [it] only sold the infringing products in Japan." Am. Compl., ECF No. 11, ¶¶ 106–07. The DTPA, a consumer protection statute, broadly prohibits "untrue, deceptive or misleading" statements "to the public" made "with intent to sell" or "with intent to induce the public . . . to enter into any contract or obligation relating to the . . . sale" of goods or services. Wis. Stat. § 100.18(1).

Cat1st argues that the complaint fails to plausibly allege that its misrepresentations, if any, caused SportPet any harm compensable under the DTPA, which provides a private right of action to recover any "pecuniary loss" caused by a violation of its provisions. § 100.18(11)(b)(2). SportPet alleges that Cat1st's misrepresentations to the public caused it to lose sales due to customer confusion and argues that Cat1st's misrepresentations about where it was selling its goods allowed it avoid legal action as it snuck into the U.S. market.

"Because the purpose of the DTPA includes protecting Wisconsin residents from untrue, deceptive, or misleading representations made to induce action, . . . proving causation in th[is] context . . . requires a showing of material inducement." *K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 2007 WI 70, ¶ 35, 301 Wis. 2d 109, 129, 732 N.W.2d 792, 802 (citations omitted). That is, to prevail under the DTPA, a plaintiff must prove that a defendant's misrepresentations were "a significant factor contributing to [its] decision" to buy, rent, or use a "product or item" and that it "sustained a monetary loss as a result." *See Novell v. Migliaccio*, 2008 WI 44, ¶ 49 n.3, 309 Wis. 2d 132, 153 n.3, 749 N.W.2d 544, 553 n.3 (quoting WIS JI–CIVIL 2418 (2011)).

Here, SportPet does not plausibly allege that Cat1st's misrepresentations caused it to sustain any pecuniary losses recoverable under the DTPA. Whether SportPet lost sales because Cat1st's misrepresentations caused SportPet's potential customers to buy products from the wrong company, those misrepresentations did not materially induce SportPet itself to act, so they did not "cause" SportPet's lost sales such that SportPet can sue under the DTPA to recover them. Further, whether Cat1st's misrepresentations allowed it to operate in the U.S. market without facing earlier legal action from SportPet, those misrepresentations did not contribute to SportPet's decision to buy anything or otherwise enter into any commercial transactions as a consumer of goods or services, so it cannot sue under the DTPA to recover for any resulting losses.

Because SportPet's complaint fails to plausibly allege that Cat1st's misrepresentations "materially induced (caused) a pecuniary loss" recoverable under the DTPA, *see Novell*, 2008 WI 44, ¶ 49, its claims under that statute necessarily fail. Indeed, to the extent that SportPet sustained losses due to Cat1st's misconduct, it did

so as a commercial competitor, not as a consumer, so the DTPA, generally, does not apply here. Thus, I will grant Cat1st's motion to dismiss as to SportPet's DTPA claims.

## IV. CONCLUSION

For the reasons discussed above, **IT IS ORDERED** that Cat1st's first motion to dismiss (ECF No. 10) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Takeuchi's motion to dismiss for lack of personal jurisdiction (ECF No. 28) is **GRANTED** and Takeuchi is **DISMISSED**.

**IT IS FURTHER ORDERED** that Cat1st's motion to dismiss SportPet's remaining patent claims for improper venue and SportPet's remaining trademark, copyright, and deceptive trade practices claims for failure to state a claim upon which relief can be granted (ECF No. 12) is **DENIED** with respect to SportPet's claims against Cat1st for infringement of its "SPORT PET DESIGNS" trademark only and otherwise **GRANTED**.

**IT IS FURTHER ORDERED** that SportPet's motions to strike; in the alternative, for leave to conduct discovery and file a sur-reply brief; and for leave to file a reply brief (ECF Nos. 21, 23) are **DENIED**.

Dated at Milwaukee, Wisconsin, this 2nd day of March, 2018.

/s Lynn Adelman
LYNN ADELMAN
District Judge